IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

METROPOLITAN LIFE INSURANCE
COMPANY

Plaintiff

vs                                                          CIVIL 97-1577CCC

IRVIS V. VAZQUEZ, HAYDEE TORRES-
DE-FRANCO, MARTA FRANCO
GOODNER, CELINE FRANCO, JOSE M.
FRANCO-TORRES

Defendants

## ORDER

This is an action for interpleader filed by Metropolitan Life Insurance Company, which deposited the proceeds of a life insurance policy on decedent José Franco. Plaintiff asks that the Court determine who is the lawful beneficiary of said policy. Claimants for the benefits are Franco's wife, Haydee Torres-de-Franco and Ms. Irvis Vázquez.

The trial was held on August 10 and 14, 2000. Torres filed her post-trial memorandum on August 30, 2000. Vázquez, who was supposed to file her memorandum simultaneously, submitted an untimely motion for a ten day extension of time. On October 26, 2000, more than a month after the requested extension of time had expired, the Court declared the motion to be moot, and granted Torres' motion to take the matter under advisement without Vázquez' brief. On November 8, 2000, more than two months after the date for the simultaneous filing and with no explanation whatsoever, Vázquez filed her brief.



AO 72A
(Rev.8/82)

CIVIL 97-1577CCC                                                  2

The Court heard the testimony of Freddy Torres, Lydia Domínguez, José Miguel Franco-Torres, Haydee Celine Franco-Torres, handwriting expert Rafael Viñas-Negrón, José Pérez and Irvis Vázquez. Documentary evidence included, among other things, handwriting examples of the decedent and Vázquez, and the contested designation of beneficiary card.

The uncontested facts are as follows: The policy in question was issued through Franco's employer, Redondo Construction Company. The last uncontested designation of beneficiary occurred in 1992, at which time Franco named his wife, Haydee Torres, as sole beneficiary. In June, 1996, Franco requested and received from Redondo employee Lydia Domínguez, and was given by her, a blank designation of beneficiary card. In July 1996, the contested designation card was brought to Redondo by Franco's chauffeur. Franco, who suffered from lung cancer for eleven years, died of a heart attack on August 7, 1996.

Based on the documentary evidence and the credible testimony presented at the trial, the Court makes the following

### Findings of Fact

Lydia Domínquez has worked at Redondo for 28 years. In June, 1996, as payroll supervisor, she was custodian of the blank designation cards and in charge of distributing them to employees when the comptroller so instructed. The company began using the 1983 revision

AO 72A
(Rev.8/82)

CIVIL 97-1577CCC                                3

She specifically stated that by July 1996, when she handed decedent the revised 10-83 designation card, she had been distributing them to company employees for approximately seven years.[1] She did this following the instructions of the company comptroller, José Lizardi.[2]

Domínguez further stated that the card on which Franco designated his wife Haydee as sole beneficiary in 1992 was a 1983 revision. Upon reviewing Exhibit I, the card naming Irvis Vázquez as beneficiary, Domínguez observed in open court that the card was a 1973 revision, and could not have been the card that she gave to Franco in 1996. No circumstance was shown to explain why Mr. Franco would use a 1973 card in July 1996 when the company had abandoned the use of such card in July, 1989 for the revised 10-83 format.

Mr. Viñas, the handwriting expert, explained how samples of Irvis Vázquez' handwriting (Exhibit A), had been taken. Signed checks from Vázquez account and checks signed by Franco during 1994 and 1996 were also used. Viñas used a chart (Exhibit II) to illustrate his analysis of the handwriting of Franco and Vázquez on the samples. After a detailed comparison of their handwriting exemplars with the writing on the contested card (Exhibit 1), he concluded that the signature on said card belonged to Franco, but concluded that the signature on the card was not made contemporaneously to the signature on checks which he signed in 1996. Viñas further

---

[1] Prior to this designation, Franco had his children and his wife as beneficiaries.

[2] August 10, 2000 trial Transcript, p.105, lines 17-22.

CIVIL 97-1577CCC                                    4

opined that the signature more closely resembled that on the 1994 exemplars, in that the Franco signatures made in 1996 reflected a serious loss of writing skill.[3] After a detailed analysis

---

[3]As an illustration of this, see August 14, 2000 Trial tr., p.20, line 3 through p. 21, line 5:

> THE COURT: If you were to explain to a lay person the difference between the signature in the 1996 checks and the signature in the controverted document, what would be the most stated features that you think separate them?
>
> THE WITNESS: Between the '94 and '96?
>
> MR. SAAVEDRA: Talking about the checks, Your Honor?
>
> THE COURT: No, the 1996 checks and the signature on the insurance card, the controverted document.
>
> THE WITNESS: Here we have check 7364.
>
> THE COURT: For what year?
>
> THE WITNESS: 1996, 7-9-96.
>
> The conditions of the writer were terrible. He maintains the characteristics of beginning the J where it really is not supposed to be begin. And then it is followed by a series of trembling, trembling where the writer does not have the mastery of the writing instrument. That is on the capital J.
>
> The M is bunched together and then with a lot of distortion.
>
> And the last name Franco is completely disorganized. While the signature that appears on the insurance, the handwriting strokes are quite smooth and made with great skill.
>
> Here the skill is completely lost.
>
> THE COURT: Mr. Viñas, how can you tell that this is a trembling hand in the 1996 checks?

CIVIL 97-1577CCC                                   5

of the Vázquez' samples Viñas also concluded that the handwritten words on the questioned beneficiary card–"Franco," "friend," "Irvis Vázquez," and the date and the numbers-- had all been written by Irvis Vázquez.

Freddie Torres, a co-worker of Franco at Redondo, who was also a friend, testified about Franco's signature, particularly as to how the decedent would sign proposals, quotations and the payroll checks. On cross examination he stated that he thought the contested card could have been completely filled out by Franco. On redirect examination, he described how, as Franco's health deteriorated, his hand trembled when writing, and it took much longer for him to sign. Torres also acknowledged that, other than the signatures, he had seen Franco write only few times and he did not witness Franco filling out the card.

Haydee Celine Franco-Torres, daughter of the deceased and Haydee Torres testified that even after her parents separated, her father continued to provide the complete support for his wife, who had never worked outside the home. During the years that she was living outside of Puerto Rico, she kept in regular contact with her father, who used to write regularly, about once a week. She stated that his illness began in 1985. There were times that his penmanship deteriorated, especially when he was hospitalized for treatments, but sometimes, after treatment, he would get a better grip on his handwriting. Franco-Torres testified that she first

---

>    THE WITNESS: Because the handwriting stroke, when it is made smoothly,
>    has no breaks in the stroke.

CIVIL 97-1577CCC                                    6

learned of the insurance policy in 1983 when he designated her mother and their children as the beneficiaries. Because his children were pretty well established by 1992, he made his wife the sole beneficiary.

The insurance policy was again discussed in May, 1996, when the family gathered in Miami at Celine's house. By this time Franco was very weak, his health very deteriorated. He had insisted on going to Miami to have a reunion with his family, notwithstanding that Vázquez did not want him to go. During this visit, Franco expressed his wishes regarding his funeral and final resting place, and how he was providing for his wife's welfare after his death. He confirmed to his children that the insurance policy was still in his wife's name. This witness stated that, when they met on July 19, 1996 at Franco's bedside, on one of the occasions that Vázquez was out of the room, he once again affirmed that his wife Haydee was the sole beneficiary. Vázquez admitted that there were times during the July, 1996 visit that she stepped out of the room while Franco's children were with him.

When asked about the writing on the contested designation form, Haydee Celine Franco-Torres stated that the written words in the text were not in her father's handwriting, but that the signature was his. She added, however, that the signature was not like his handwriting at the time of the date on the card. Rather she placed the signature around 1992. She explained

CIVIL 97-1577CCC                    7

that by July 12, 1996, her "father had a very frail, shaky signature," and described the signature on the questioned card as "a very precise and strong, clear signature . . . the way I would recognize it in his good times."[4]

José Miguel Franco-Torres testified that at a 1992 meeting with his father and sisters, Franco told his children that he was going to take them off the insurance policy and leave their mother as the sole beneficiary. This witness stated that at a similar meeting in May of 1996, Franco told his children that he had made the change.

Aside from José Pérez, who testified that in July, 1996 he delivered a manila envelope from Franco to Redondo, Irvis Vázquez' case was based entirely on her own testimony. On direct questioning by her attorney, Vázquez testified that she and Franco had lived together as husband and wife from 1980 until 1996. Both of them paid the household expenses, but the deceased wrote and signed the checks. However, Vázquez started writing the checks in Franco's account in May 1996, at his request, because he thought that his handwriting was ugly.

Vázquez stated she never discussed the insurance policy with Franco and categorically denied filling in the text of the beneficiary form in issue, and identified the handwriting as Franco's. She did claim that even while he was sick he would tell her that he worried about her but he would not leave her out in the cold. In discussing her own income as a travel agent, between salary and commissions she was making about $2700 to $2900 a month.

---

[4]August 10, 2000 Trial Tr. p20, ln. 18 -p.22, ln. 7

CIVIL 97-1577CCC                                             8

At trial, Vázquez was confronted with her February 9, 1998 deposition testimony. At that time she thrice stated that she did not know to whom the handwriting on the contested card belonged. Referring to her deposition testimony, she testified on cross examination at trial: "I was asked both things, who signed and who filled out the card, and I answered to both that I didn't know."[5] Incredibly, she made the following statements at trial:

> A: I have never known who filled it out, but today, seeing traces, or observing, I am seeing traces of Mr. Franco's.
>
> THE COURT: Today?
>
> THE WITNESS: Yes, ma'am.
>
> Q. For the first time?
>
> A. I have observed it more carefully.
>
> Q. For the first time?
>
> A. Today for the first time, yes, I have observed it with more deliberation, and there are traces of Mr. Franco.

August 14, 2000 Transcript, p. 65, line20 thru p. 66, line3.

Vázquez also contradicted herself when she testified that although Franco's checks were used to pay the mortgage of a house she owned, she gave him money to deposit in his account. At her deposition she stated that he would give her the money for the mortgage payments.

---

[5] August 14, 2000 Trial tr. ,p.62 lines 2-9

CIVIL 97-1577CCC                                              9

Based on the Findings of Fact outlined above, the Court reaches the following

## Conclusions of Law

The last beneficiary card executed by Franco was the 1992 card designating his wife Haydee as the sole beneficiary. The contested card dated July 12, 1996 was the previous version, the Rev. 7-73 form that was no longer distributed by his employer and which he had obtained and had signed, in blank, much earlier. Franco could not have signed the card in July, 1996 as claimed by Vázquez because by then his signature had significantly deteriorated, due to his illness and weakened condition. The handwriting expert's testimony clearly established that the text of the disputed document was filled out by Vázquez herself and that the signature was an earlier signature of the deceased which was not contemporaneous to July, 1996, date on the contested card. The Court finds, by a preponderance of the evidence, that Vázquez, not Franco, filled out the entire remainder of the card to make herself his beneficiary. We give no credibility to Vázquez' testimony regarding its contents. Her conduct was deceitful, as was her trial testimony.

CIVIL 97-1577CCC                                10

Accordingly, we conclude that Haydee Torres-de-Franco is the sole legal beneficiary of the life insurance policy in question. Finding Vázquez' pursuit of the benefits of this insurance policy to be unconscionable, she will pay all costs and attorneys' fees for the other parties.

SO ORDERED.

At San Juan, Puerto Rico, on March 29, 2001.

CARMEN CONSUELO CEREZO
United States District Judge

s/cs:to ( 5 )
attys/pts
in ICMS

MAR 3 0 2001

AO 72A
(Rev.8/82)